This is an appeal by two nephews of Andy Clarence Whitaker, deceased, from a decree which construed his will in a manner adverse to them. We reverse and remand.
The suit was initiated by Novella Whitaker Smith, administratrix C.T.A. of Whitaker's estate, who sought a declaratory judgment construing his will which had been admitted to probate. Whitaker, a farmer with little schooling, was a wealthy man when he died in 1979 at the age of 82. Among his assets were over Four Hundred Thousand Dollars in personalty, certain real property in Guntersville, and two farms. Whitaker left no widow, children or descendants of children. His closest surviving relatives were several sisters and two nephews, Donald Smith and Charles Woodall, the appellants.
It appears from the evidence that in 1977 Whitaker had a will prepared by a lawyer. But in 1978 he made another will, which is the subject of this appeal. After drafting this will in his own hand, Whitaker took it to the Guntersville office of the Huntsville Production Credit Association (of which he had been a director) to be typed. Because the handwritten instrument was illegible in places and disorganized in others, the actual typing resulted from a dialogue between Whitaker, the agency manager, and the *Page 136 
typist. It also appears that at this time Whitaker was contemplating marriage; references to that possibility in the last will are the root of the problem before us. The typed copy, which varies in several respects from the handwritten draft, was admitted to probate.
After hearing the evidence, the court below held that the third paragraph of the probated will which, inter alia, gave the farms to the appellants, was inoperative because its operation was based upon an unsatisfied condition, i.e., Whitaker's marriage. Further, the trial court held that a postscript to the probated will was a controlling provision mandating the distribution of Whitaker's assets to his heirs in accord with intestacy laws.
Paragraph (3) of the handwritten will recites:
 In the event I shall remarry then my last wife will be given as long as she remains my widow shall have a life time owner ship of all my city property Includind my bank stock in First Alabama Bank and The First National. Also $85,000.00 which will put in soon after our wedding and that shall be hers. It shall be put in her name and mine. The one that dies first shall be the others. Further more she shall have the right to colect all rents and keep same up and keep the taxes paid — This is remain as long as she my widow — My to Farms which is divided by the Saint John Estate the upper South Side to Donald Smith the North Side containing about 11 hundred 17 acres to Charles Woodall the South Side contains about 600 acres — Next thing that in case I do remarry as it shall be sold this City property and be divided as to American cancer and heart fund Shriners crippled children and Masonic home This to be dun in case she remaries and no longer being my widow she is to keep it her life time I also further I ask that thes two I have given my farms to give between them to my five sisters a sum of Fifty Thousand — Each this shall be a sum of 25 Thousand Each P S in case I do not remarry May God Bless You It all Shall be given to me A C Whitaker
The typed copy of this paragraph contained a postscript at variance with the handwritten version: "In case I do not remarry all shall be given to the A.C. Whitaker Estate."
Of course the testator's intent is the polestar in the construction of a will, Allen v. Maxwell, 249 Ala. 655,32 So.2d 699 (1947), and that intent is to be gathered from the whole instrument, reconciling conflicting clauses so as to make each operative, if possible. Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326 (1948). The result of these principles favors a construction which discloses a consistent whole in which a general and primary interest prevails over a secondary interest which is contrary, Henderson v. Henderson, 210 Ala. 73,97 So. 353 (1923), mandating, when more than one construction is possible, that construction which will render the will valid.Castleberry v. Stringer, 176 Ala. 250, 57 So. 849 (1912); FirstNational Bank of Birmingham v. Klein, 285 Ala. 505,234 So.2d 42 (1970). And if it is necessary to effectuate the meaning and intent of the testator, other words will be substituted for the literal ones used in the will itself. George v. Widemire,242 Ala. 579, 7 So.2d 269 (1942). It has also been held that where an estate or interest is given in one clause of a will in clear and decisive terms, the interest cannot be taken away or diminished by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate. Austin v.Pepperman, 278 Ala. 551, 179 So.2d 299 (1965). And consistent with its search for a construction which reconciles inconsistent clauses and thus upholds the will, a court may transpose or rearrange the clauses in order to give effect to the testator's intention. Walker v. Walker, 17 Ala. 396 (1850).
Applying these principles to paragraph (3), we have concluded that the trial court erred in its finding that the distribution *Page 137 
provided therein was conditional upon the remarriage of Whitaker. The language of that paragraph clearly discloses that Whitaker's purpose in making the dispositions it contains encompassed more than the possibility of remarriage. This is demonstrated by arranging the terms in the order of their subject-matter:
The first subject deals with his remarriage and the rights of his widow in his bank stock, city property, and a joint ownership in an Eighty-Five Thousand Dollar account.
The second subject, unrelated to the remarriage provision of the first, devises the farms to these appellants.
The third subject pertains to the city property. It reiterates the life estate of his widow in the city property for as long as she does not remarry, and directs the sale of that property following the termination of her interest and the distribution of the proceeds to designated charities.
The fourth subject imposes an obligation upon each of the devisees of the farms (dealt with in the second subject) to provide Twenty-Five Thousand Dollars to the testator's five sisters.
The fifth subject relates to the subject of his remarriage. Failing that, "it all shall be given to me" or to his estate.
The proper order of the subjects would bring the first, third and fifth parts together because they deal with his remarriage and the rights of his widow in certain (but not all) of his property. The fifth part, admittedly, is ambiguous. Nevertheless, by using that ambiguous language in the fifth part we cannot ascribe to the testator an intent to devise the farms to these appellants, by unambiguous language in the second part, and then to have those same farms pass through intestate succession if he did not marry. Such a construction would be contrary to the principles expressed earlier. It is our opinion that the devise of the farms to these appellants was intended to be unconditional.
Because the construction placed upon paragraph (3) does not accord with this view, the decision of the trial court is reversed and this cause is remanded to allow that court to enter an order not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.